All right, Mr. Venezia, is that right? Okay. Two of you have been patiently waiting. You've learned all about criminal conspiracy, use of drugs, and arrests, so you're armed and ready. Very interesting morning, Your Honor. All right, go ahead. May it please the Court, My name is John Venezia, and I represent Johnny Thornton, who was a plaintiff in a civil rights lawsuit he filed against Sergeant Corey Lymous of the New Orleans Police Department. My client's case was dismissed by the District Court on a Rule 12b6 motion to dismiss, and we're here appealing that ruling, believing that it was in error. As the Court, I'm sure, well knows that in a Rule 12b6 motion, both the lower court and this Court have to assume all the are true, are well-pled facts. All inferences of fact must be resolved in favor of the non-mover, which was my client. This Court has the ability to review the lower court's ruling de novo, and there's no ambiguity or question about the standard of review, unlike some of the earlier cases Your Honor's dealt with. Now, my client's complaint, the active complaint, alleges that Mr. Lymous, or Sergeant Lymous, went and obtained an arrest warrant for my client. In the arrest warrant, he alleged that three juvenile detainees at the jail where my client worked alleged that those detainees accused my clients of committing acts of violence on them. His affidavit, in addition to detaining those allegations, included a false statement. False statement was that the video that captured one of the incidents showed that my clients had a motion that was consistent with a jab punch. The video does not show that my client's motion was consistent with a jab punch, making that allegation false. Also in that affidavit, Sergeant Lymous stated that he believed that there was probable cause for my arrest when he gave statements to my client contrary to that. He told my client that he did not believe there was probable cause for an arrest, and he was doing it because his boss told him to. In addition to those two false statements that were in Sergeant Lymous' affidavit, there was also a lot of exculpatory evidence that Sergeant Lymous was aware of that he omitted from the affidavit. He omitted that Mr. Thornton, my client, was a witness against one of these juveniles who had attempted to escape prior to these alleged acts of violence. Several months before that, the juvenile tried to escape the jail facility, and my client, along with the other people that worked there, caught him. So that gave this accuser additional grounds to lie about what my client did. That information was not included in the affidavit. That accuser, as well as the other two accusers, had very violent and criminal histories, and those facts were not made known to the magistrate when he filled out his affidavit. There were the video of both the first incident, which showed some of the actual melee, and then the later two incidents, which were to show my client carrying the accusers into their cells, and you couldn't see what occurred in the cells. Those videos showed a whole bunch of other jail employees who were physically present and could see what happened, including what happened in the cell, because it shows them going into the cell with him. All of those other jail employees gave written statements to contemporaries that were written contemporaneous with the events that Sergeant Lamas had had that said my client was innocent. He did not relate to the magistrate judge that those people that gave exculpatory statements, that their ability to observe what happened by the videotape. Sergeant Lamas did not include that the accuser's injuries could have come, or likely did come, from prior altercations that they had. My client did have to put force on these individuals in the jail because they were all engaged in active violence with other people, some with other jail employees when one of them tried to throw bleach into the eyes of one of the female employees. Other times, the other two were in fistfights with other detainees, and my client had to restrain them in order to protect the other detainees from injury. Those acts of violence were sources of injuries that were not related to the magistrate judge. One of the accusers claimed to my client, very audaciously, pinned him down and tried to grab his penis, or did grab his penis, six times. One on its face, that's not very plausible because it was done with a whole bunch of other adults around, and that's just a very, very bizarre thing for someone to accuse him of doing right there in the open with all these other witnesses around. But that juvenile, before he gave the statements to Sergeant Limas, had gone to the hospital, and he didn't tell the doctors at the hospital that that is what happened to him. So there was an inconsistency between what was in his medical records and what he told Sergeant Limas. That inconsistency was not made known to the magistrate, although it was known to Sergeant Limas. One of the detainees claimed that he was playing around with the other guards when Sergeant Limas, Mr. Thornton, had to come and restrain him. Well, the video shows him taking a cup of bleach and throwing it at the other people's eyes. That's not playing around, and it's obvious from the video. So he gave an inconsistent statement, that particular juvenile gave an inconsistent statement about what he was doing. That inconsistency was not presented to the magistrate. Sergeant Limas and the other officers who Thornton was guilty did not believe that there was probable cause. Sergeant Limas said this to Mr. Thornton, that their beliefs about what these experienced officers, beliefs about what they observed and learned about with these incidents, was not related to the magistrate judge. The fact that the only reason that Sergeant Limas chose to arrest my client was because his boss told him to, that fact was not included in the affidavit. We believe the omissions of all this very important information, as well as the inclusion of the false information, amounts to a Franks case. The Supreme Court in Franks v. Delaware said that an affidavit, or recognized that an affidavit that was based upon, excuse me, a warrant that was based upon an affidavit containing false information, was invalid. The progeny have often said, you know, particularly I point out Winfrey v. Rogers, said that, you know, failure to include or omitting exculpatory evidence can be the basis for a Franks claim in a civil rights action like my client is pursuing. Now in Winfrey v. Rogers, this court reversed a lower court's granting of a summary judgment when the officer failed to include in his affidavit exculpatory evidence, excuse me, inconsistent statements made by the accuser and forensic evidence that tended to show that the plaintiff in that case was not guilty or not, you know, not worthy of being arrested. Now, neither the inconsistent statement nor the forensic evidence made that particular plaintiff, you know, absolutely certainly innocent. There is still the remote possibility that he was, in fact, guilty of the crime. Nonetheless, this court says that still wasn't sufficient to establish probable cause. The omissions don't have to rise to like DNA evidence and have to rise to the standard where we know for certain that the plaintiff is absolutely innocent in order for there to be a Franks claim against the officer who omitted the appropriate evidence from the affidavit. And I think that is what you have here. You have an officer that in repetitive instances in lots of different ways omitted exculpatory evidence and included false evidence in his affidavit to get a warrant to arrest my client and it was done so improperly, particularly in this case, whereas Mordiff was doing so to make his boss happy. So, counsel, just to clarify, the false evidence you say was included in the affidavit is really the affiant's opinion about what the video showed, right? In other words, it's consistent with a jab punch. Yes, but there's some things, you say opinion. Yeah, I mean, how is that a fact? Because a jab punch is to require the use of my arms. In the video, my client's arms are occupied restraining the defendant, his upper body, while other people are holding the defendant, the accused, accuser's legs. So Mr. Sexton was the gentleman's name that they were restraining. So his arms are accounted for. So the video, I mean, you're right, some things could be an opinion on a video, like whether that's a different shade of brown. We might have to argue about what different shades of brown that might be. But the fact that it's brown is not going to be a difference. It's not going to be something to debate. Since my client's arms were occupied throughout the entire time, there's nothing in it that any reasonable person could see to reach the conclusion that his movements was consistent with a jab punch. What about the district court's conclusion, though, that if you remove that, there were still probable cause? Well, the district court's conclusion is their conclusion, but it's not one that you are bound to at all. This is not a jury trial. This is not even a summary judgment grant. This is not an ERISA trial. This is just her reading the cold record and coming to this conclusion that I disagree with. And your honors are not restrained in any way or do not have to give deference to the lower court's decision in any way, shape, or form. Counsel, to frame the Franks issue, we have to remove from the set aside the false statements that were made and then ask the question of whether there's probable cause. And I'll take away the misstatements, the inaccuracies there. The question is, does probable cause remain? You still have a picture of a very heavy treatment of a detainee, et cetera, et cetera. I'm not framing the issue. That's their question. Take away those and then what's left. It is, but it's more than just taking away the false statements. You also have to add in all the exculpatory statements. And there's plenty of exculpatory statements. There's no mention whatsoever in the affidavit of Mr. Stetson's very specific motivation to lie because my client caught him escaping two months before. That's a clear motive for that juvenile to lie about my their criminal histories were not contained in the affidavit. Other things. The criminal history is exculpatory. I mean, by virtue of the fact that they were in the juvenile detention, you could say they've got a criminal history, but that doesn't mean that they basically can't be victims of a separate crime. It doesn't, but it's a factor. I mean, the rules of evidence say that a person has a conviction. That alone can be a reason to find them incredible. That's true in law going back probably centuries. Um, probable cause stage. It's still a factor that you still would have to list a reliability of an informant in a criminal affidavit. You still have to say he's got prior officers required to say that he's got prior criminal histories when someone gets he's an informant for an affidavit for a wiretap or something of that other nature. You still, that's still an issue in it is particularly like when you had other people who are eyewitnesses of the events who had zero criminal histories. And another factor that that I think is unique to this case is that the three individuals knew one another and were associates with one another engaging criminal activity outside of this before this. So getting their story straight, although I should say this with Mr. Sexton, to my mind, there's absolute proof that what he was saying was not true because the videotape completely exonerates it. He said he was playing around. He was throwing bleach in somebody's eye. It does not show him that my client tried to do a jab punch on him. It clearly shows he did not try to do that. So, and he also said that it was my client's actions that forced him to the ground. If you look at the video, that's not what happened. It was Mr. Sexton's own actions that brought both him, my client and other people to the ground. So there's no doubt whatsoever. That's almost akin to DNA evidence that Mr. Sexton was a lie. Well, Mr. Sexton was buddies with the other two and they all get together on the same day and make false statements against my client. I think that is sufficient to say that there was a lack of probable cause. I don't believe that any reasonable person could believe these three individuals in their accusations. The reason I asked you to frame the question, we're not dealing with a fully developed record of probable cause, et cetera. The question is whether this warrant was supported by probable cause and if there are any misstatements in that, that would leave probable cause. There's an awful lot left in here after you pull away your characterizations of these other arguments. My boss told me to do it. Certainly, for example, it doesn't necessarily take away much of anything. If anything, it might reinforce it. So you've thrown a lot of things in there and I appreciate that, but I think we have to zero in on the things that are arguably material. You can take away some material facts that are material in that sense, but the question is the residual, what's left when you take those away in the Franks delegation? That's why Franks sets a high standard so that you don't have people who issued warrants and the officials, the intermediaries are not called to task for retrials later of a probable cause issue. It is, but in this case, there's a whole lot of exculpatory evidence, including inconsistent statements made by the accusers. There's precedent from this because when you're correcting the affidavit, it's not just excluding the false statements, it's excluding the false statements and adding in the missing or omitted exculpatory information. So when you put that back in, it makes, it shows the inconsistencies between the three accusers, which is what was critical in overturning the summary judgment, which would be Rogers. It was critical in the Fifth Circuit's finding and Hale v... I keep going back. It's not a question of an officer arrested the man for what he did. You have an intermediary present the warrant clause that protects a citizen from unlawful arrest. And if you got arrested, you insist you got to have a warrant. Well, that's why we have an intermediary. And it's, the question is what, when that intermediary is there, is there material evidence before them? And what you're doing is really putting, to retry all those other, all those other facts. But, but, but that's what Frank says. Frank says that if the intermediary is tricked and duped, then, then the warrant's not valid. And that's what I believe occurred in this case. The intermediary was duped. And it's an interesting fact about the intermediary doctrine. It's maybe not directly a point. This case with all the facts presented to a grand jury, state grand jury. Stop you there, Mr. Venise, because you're shifting to another point. But you've reserved your rebuttal time to come back up. So, we have your open argument. So, let's hear from Ms. Gudeau. And you've got your five minutes intact. Okay. All right. Ms. Gudeau. Good morning. Renee Gudeau on behalf of the City of New Orleans and Sergeant Corey Limas. I need your theater voice. Yes, Your Honor. The city filed a Rule 12 motion to dismiss, asserting that plaintiff's allegations regarding the alleged omissions and false statement do not negate probable cause for his arrest. Therefore, his Fourth Amendment claim fails as a matter of law. The district court agreed with the city, finding that plaintiff failed to demonstrate that probable cause was lacking for any of the three crimes for which he was arrested. In making this finding, the district court reviewed the sufficiency of Sergeant Limas' affidavit by analyzing plaintiff's allegations regarding the alleged omissions and false statement in conjunction with the entire affidavit in order to determine probable cause. The district court properly determined that the affidavit contained ample evidence from independent sources to support a finding of probable cause, even considering plaintiff's omissions and false statement. Therefore, plaintiff's Fourth Amendment claim failed. Plaintiff has filed this appeal and asserts a series of omissions are fatal to the affidavit. Those mainly concern the reliability and credibility of the juveniles in this instance. Plaintiff first points to the juveniles' criminal and violent history, stating that that should have been included, as he mentioned today. In the same vein, plaintiff has claimed that his and the other staff members' lack of violent criminal history should have been included. Plaintiff also alleged this broad conspiracy claim between the juveniles, claiming that they are known associates of one another who each made false statements to seek revenge or retribution against the plaintiff. This circuit precedent dictates that victim eyewitnesses are considered reliable reporters absent a clear motive to lie. In fact, victim eyewitnesses' lies do not need to be proven. Mr. Venezia cited Hale v. Fish, where it found the exception where the victim eyewitnesses were being prosecuted by the DA's office that was subject to a criminal inquiry leading to the plaintiff's arrest. I will note that in Hale v. Fish, they did note that there were some questions regarding the reliability, but the court ultimately determined that the affidavit contained ample evidence from other independent sources to support a finding of I want to note that the issue in this case is about juvenile victims with pending delinquency charges who are reporting misconduct by Youth Studies Center staff. And as this court noted, the district court cited four important points in their ruling regarding these issues, the first of which is that the district court noted that the criminal histories of the juveniles could have been inferred by their detainment at the Youth Studies Center. Also, that their prior conduct does not preclude them from being victims of a crime, nor does it automatically render their guilty. The district court readily distinguished Hale and also determined that the motive to lie asserted by the plaintiff is highly speculative and misplaced in the context of the arrest warrant. As I noted in my reply with the district court is that there is no indication that the juveniles were being prosecuted for these alleged violent acts against others or the attempted escape. Therefore, Mr. Thornton would never have been called as a witness to any sort proceedings related to that. It's just a highly speculative claim. Furthermore, all any credibility issues are undermined by the numerous sources of independent evidence that was cited in the affidavit. I want to note that this affidavit is a four-page, single-spaced affidavit, and it provides a detailed account of his review of multiple sources in connection with the three incidents. This includes the incident reports, the forensic indicated that Kylie Sexton suffered a concussion, the video footage, and also Sergeant Limus' own observation of the injuries. Thus, the district court properly found that the affidavit contained ample evidence from independent sources to support a finding of probable cause, even considering the credibility issues that are implied by the plaintiff. Plaintiff also alleges that Sergeant Limus intentionally excluded that the source of H.T.'s injuries was regarding his fight with another detainee rather than the plaintiff. In making this assertion, plaintiff inappropriately suggests that Sergeant Limus should have made a medical and causation determination of his injuries in his affidavit. I will note that the fight between H.T. and the other detainee was documented on page three of the affidavit. Plaintiff also alleges that Sergeant Limus omitted other facts from the video and medical records that show that Kylie Sexton's injuries were false, as he stated today. The district court noted that plaintiff failed to identify any facts which show beyond a doubt that Kylie Sexton's accusations were false. I'll note that the affidavit indicates that the video footage is only available of the common area, that there is no video footage available from the interior of the juvenile cells. Next, in terms of the medical records, it's clear that Kylie Sexton suffered a concussion. It's unclear what facts would show beyond a doubt that Kylie Sexton was lying in this instance. As noted today, plaintiff has made one last attempt at salvaging his omission claim by citing Winfrey v. Rogers. In Winfrey, the omitted information from an arrest affidavit include physical evidence, it was actually a scent lineup, that which did not exculpatory witness statements. This court found that the affidavit in that instance did not contain sufficient information to establish probable cause. Plaintiff's reliance on Winfrey is clearly misplaced. This case is readily distinguishable. Sergeant Limus included all of the exculpatory material in his affidavit. This includes the plaintiff's own statements regarding that he did not use excessive force or profane language. That's on page four of the affidavit. Sergeant Limus also included statements from the other Youth Studies Center staff by name and by their position at the Youth Studies Center, and they all indicated that he did not use excessive force or profane language. Sergeant Limus relayed what he observed on the video footage, as well as noting that the video footage was not available from the interior of the cells, and he also documented the fight between H.T. and the other juvenile. Therefore, it's clear that the affidavit doesn't lack probable cause, even considering plaintiff's omissions. In terms of the false statement, plaintiff claims that Sergeant Limus falsely stated that the video of the incident shows that one of the plaintiff's movement was consistent with a jab punch. Buehler versus the City of Austin, Anderson versus City of Macomb has shown that actions that are subject to different interpretations are not the false statements that are to be considered under Franks. The district court correctly cited Buehler and Anderson to find that the alleged false statement merely reflects what Sergeant Limus' interpretation of what he saw on the video and does not represent the kind of knowing and intentional false statement that is required. Nevertheless, the district court found that probable cause existed absent the jab punch statement, specifically because it does reference the independent sources of the evidence, which include the incident reports, the forensic interviews, medical records, video footage, and his own observation of the injuries. Thornton's argument that the inclusion of the alleged false statement and exclusion of the exculpatory evidence would negate probable cause for his arrest fails as a matter of law, and the district court correctly determined that he failed to sufficiently plead a Fourth Amendment violation. I'll note that the court concluded that there was not a violation, therefore it did not address whether Sergeant Limus was entitled to qualified immunity. On the same claim, this issue was raised on appeal, so I'll just briefly address that issue of whether or not Sergeant Limus' conduct was objectively reasonable. The Supreme Court has held that law enforcement officials who reasonably but mistakenly conclude that probable causes present are entitled to qualified immunity. Plaintiff doesn't claim that the omissions or statements were the product of a deliberate falsehood or reckless disregard for the truth, nor does he indicate that other officers would have included or excluded this statement. In conclusion, the district court properly granted the city's motion to dismiss because the plaintiff failed to allege a Fourth Amendment claim. It's clear that the alleged omissions and false statement have little to no bearing on the determination of probable cause in this particular instance. The appellees pray that this court affirm the district court's ruling. I'm happy to answer any questions regarding... Thank you. I think we have your argument. Thank you. Thank you, ma'am. All right. Back to you, Mr. Benicio. Any rebuttal? There was another intermediary that reviewed this matter. The district attorney, the state district attorney, took this case, including both the inculpatory and exculpatory information, presented it to a grand jury. The grand jury returned a no true bill. That's not dispositive, but it should be given just as much weight as the lower court's finding that there was probable cause. Had he been indicted by the grand jury, we wouldn't be here right now because that would have been sufficient as a matter of law to establish probable cause. He couldn't even question it in the state court proceedings with a preliminary examination because the finding would have been... He would have been held to it. It would have been favorable for him. The proceeding that he didn't participate in was resolved in his favor because the full story was told to them. I don't believe that the full story establishes probable cause. I think the full story, as outlined in our complaint, including all the omitted exculpatory evidence, shows that it is not reasonable to believe what these three said about my client and that he should never have been arrested. I think that his case is similar to the Hale v. Fish case. I think it's similar to the Sanders v. English case, and I think it's similar to the Winfrey v. Rogers case. In all of those cases, there was exculpatory evidence that was exempted or not included in an affidavit, and either this court overturned a summary judgment grant in favor of the defendant or affirmed a trial court verdict in favor of the plaintiff. I believe that Your Honor should reverse the low court's decision. All right. Thank you, Mr. Venezia. Appreciate your briefing and argument. Same to you, Ms. Goodall. That concludes the argument in this case. It'll be submitted, and that concludes the oral arguments for the panel for today. We will resume tomorrow morning at 9 a.m. In the meantime, we stand adjourned for today.